FARMERS' GIN CO. et al. v. ARMSTRONG et al.

No. 1558.

Court of Civil Appeals of Texas. Waco.

March 7, 1935.

F. B. Davenport, of Dallas, and Jos. W. Hale, of Waco, for appellants.

Tom P. Scott and W. V. Dunnam, both of Waco, for appellees.

GALLAGHER, Chief Justice.

This suit was instituted by Farmers' Gin Company of Milford, Tex., a corporation, and approximately 45 other individuals, firms, and corporations in their several capacities as subscribers or members of Texas Reciprocal Insurance Association, a reciprocal inter-insurance exchange organized under the provisions of chapter 20, title 78, of our Revised Statutes (article 5024 et seq.), against G. E. Armstrong and J. B. Greer, individually and as attorneys in fact for said association, the Service Mutual Insurance Company of Texas, a corporation, and the Citizens' National Bank of Waco, a national banking corporation. The Texas Reciprocal Insurance Association as an unincorporated entity was not made a party. Pending the suit, all the parties plaintiff named in the petition were dismissed therefrom except Farmers' Gin Company, Inc., of Liberty Hill, Tex., and 8 others, who will be hereinfter called appellants.

Appellants alleged that there were not less than 500 subscribers or members of said association, and that this suit was brought and prosecuted for themselves and also as a class bill in equity for the use and benefit of all other subscribers or members of said association. Appellants further alleged that said Armstrong and Greer, purporting to act for the subscribers and members of said association, had entered into an agreement with said Service Mutual Insurance Company whereby they transferred to it all the assets of said association in consideration of the reinsurance and assumption by said company of all policies, claims, and other liabilities of such association. Appellants further alleged that said Armstrong and Greer were not authorized by the subscribers of said association, or any of them, to enter into said agreement nor to transfer said assets, and that such action on their part was void, but that the effect thereof was to terminate the activities of said association. Appellants further alleged that said assets so transferred consisted in a large part of moneys contributed by the subscribers or members of said association as premium deposits, amounting in the aggregate to more than $50,000, that the same constituted a trust fund, the equitable title to which was vested in the several subscribers or members of said association, and that such moneys, or a large part thereof, were on deposit in said Citizens' National Bank.

Appellants prayed for the immediate appointment of a receiver to take charge and possession of all the assets belonging to the subscribers or members of said association; that such receiver be authorized and directed to convert all such assets into cash and to pay all outstanding claims and obligations under proper orders of the court; that the legal relationship existing between such subscribers and members be terminated and dissolved, and for all other appropriate orders and relief. Appellants also prayed for a mandatory injunction requiring appellees, and each of them, to surrender and deliver to the receiver, when appointed, all assets in their hands respectively belonging to such subscribers or members.

The court, upon presentation of appellant's petition, set the application for a receiver for hearing. Appellees Armstrong and Greer and the Service Mutual Insurance Company appeared and filed a plea in abatement. The Texas Reciprocal Insurance Association, acting by appellee Greer as its attorney in fact, though not in terms made a party to appellant's petition, joined in said plea. Appellees in said plea challenged the right of appellants to maintain this suit, on the ground that both said association and said insurance company were organized and operating under the laws of this state, and that appellants, as individual subscribers or members

of said association, could not maintain such a suit as this for the purpose of restraining or interfering with them in the prosecution of their business and for the purpose of liquidating the same. The court considered the pleadings of appellants, and found therefrom and from the agreed evidence that this was a suit of the character aforesaid; that the same was instituted and being prosecuted by appellants as private citizens without authority from the insurance commissioner, Attorney General, or any other representative of the state, and upon such findings entered an order sustaining said plea and dismissing the suit.

### Opinion.

Appellants assail the action of the court in abating their suit because the same was not instituted nor prosecuted by the insurance commissioner through the Attorney General, or some other attorney designated by him to do so. Appellants contend in this connection that article 4690 of our Revised Statutes, as amended by Acts 1931, c. 152, § 2, and Article 4691 (Vernon's Ann. Civ. St. Arts. 4690, 4691), are rendered inapplicable to associations organized and operated under the reciprocal or interinsurance plan as authorized by chapter 20, title 78, of said Statutes (article 5024 et seq.), by article 5033 of said chapter, which is, in substance, that, except as in said chapter provided, no other insurance law shall apply thereto. They further contend that they as subscribers or members of said association could in their own right prosecute a class bill for the appointment of a receiver, the closing of the affairs, the payment of the debts, and the distribution of the assets of said association, and that the court erred in refusing to permit them to do so. The several articles of said chapter 20 contain many provisions subjecting such organizations to the control of the insurance commissioner, requiring them to furnish to him certain information, to comply with certain specified requirements, and to procure and keep in force a certificate of authority to conduct such business. Article 5030 of said chapter contains the following express provision: "The business affairs and assets of said reciprocal or inter-insurances exchanges, as shown at the office of the attorney thereof, shall be subject to examination by such Commissioner." The examination referred to in said excerpt is authorized by article 4690 of chapter 1 of said title, as amended, and the powers and duties of the commissioner in connection with the making of such examination are definitely specified in article 4691 of said chapter. Subdivision 5 of said article is as follows: "He shall also have power to institute suits and prosecutions, either by the Attorney General or such other attorneys as the Attorney General may designate, for any violation of the law of this State relating to insurance. No action shall be brought or maintained by any person other than the Commissioner for closing up the affairs or to enjoin, restrain or interfere with the prosecution of the business of any such insurance company organized under the laws of this State."

The business of insurance is quasi public in its nature and subject to regulation and control by the state. The policy of this state with reference to the dissolution and winding up of the affairs of its legal entities is that the right to bring about such results belongs exclusively to it, and that individuals, unless authorized by statute, cannot invoke the aid of the courts to effect such purpose. See, in this connection, State v. Robinson (Tex. Civ. App.) 42 S.W.(2d) 457, and authorities there cited. We are therefore required, in considering the excerpt from article 5030 above quoted, to give the same a construction in harmony with the public policy of the state as above recited. The express authority of examination so conferred on the commissioner must therefore be held to carry with it the statutory provisions for conducting such examinations, for protecting the subscribers from illegal acts, if any, on the part of those in charge, and the exclusive authority, in his discretion, to terminate the activities and close the affairs of such organizations by an action in court. We therefore hold that the subscribers or members of the Texas Reciprocal Insurance Association and their attorneys in fact in conducting the business of the same were not exempt from the provisions of subdivision 5 of article 4691, above quoted, relating to such examinations, and that appellants were without legal capacity or authority to maintain this suit to close its affairs. The plea in abatement was therefore properly sustained.

The judgment of the trial court is affirmed.