## REPUBLIC UNDERWRITERS v. FORD
### et al.
### No. 8907.

Circuit Court of Appeals, Fifth Circuit.
Dec. 14, 1938.

Frank M. Wilson, Tom P. Scott, and John B. Atkinson, all of Waco, Tex., for appellants.

Robt. E. Cofer and John D. Cofer, both of Austin, Tex., and Harold H. Young, of Dallas, Tex., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, Republic Underwriters, was organized in 1927 as an interinsurance or reciprocal association under the provisions of Chap. 20, Title 78, Revised Civil Statutes of Texas, 1925, Articles 5024 to 5033.

governing the kind of insurance it was organized to do.[1]

On July 27, 1927, the Commissioner of Insurance issued an original license and certificate of authority. On July 15, 1930 an amended license and certificate was issued to effect a change in name, and to permit the writing of additional types of insurance. And annually, thereafter, the Commissioner has issued a license and certificate. "Approximately 150,000 insurance contracts, issued by the attorney in fact, were exchanged by the various subscribers of the associations, and Republic Underwriters continued to transact an insurance business consisting of Workmen's Compensation, public liability, explosion, fire, property damage, surety bond and automobile insurance as authorized by the Department of Insurance of Texas, until March 30, 1938, at which time the Commissioner of Insurance of the State of Texas determined that it was insolvent."[2]

On March 30, 1938, the Commissioner, acting under Subd. 5[3] of Article 4691, Revised Civil Statutes of Texas,[4] determined that it was insolvent. Upon his application on that day the One Hundred and Twenty-sixth District Court of Travis County, Texas, appointed a receiver to, and he did, take charge of all its properties and affairs, and a liquidation of its assets was commenced under the receivership, prior to April 1, 1938, when appellees filed their petition to have it adjudicated an involuntary bankrupt.

Appellant answered, denying the jurisdiction of the bankruptcy court over it, and asserting that it was an unincorporated insurance company or association, and not subject under Sec. 22(b)[5] Title 11, U.S.C. A., to be adjudged a bankrupt, the State of Texas, the state court receiver joining in, intervened to make known to the court that under applicable State statutes, it had applied for and obtained the appointment of a state court receiver to liquidate and wind appellant up as an insurance com-

---

[1] Art. 5024 authorized the subscribers to exchange reciprocal or inter-insurance—providing indemnity among themselves from any loss which may be insured against under other provisions of the laws, excepting life insurance.

Art. 5025 provides for an attorney in fact for the subscribers.

Art. 5026 requires the subscribers, through their attorney, to file a declaration with the Commissioner of Insurance, setting forth (1) the name or title; (2) the kind or kinds of insurance to be effected or exchanged; (3) a copy of the policy by which such insurance was to be effected; (4) a copy of the power of attorney under which it was to be effected; (5) the location of the office; (6) that applications have been made for a certain aggregation of indemnity, or in the case of liability or compensation insurance, covering a certain fixed payroll, and that there is on deposit payment for losses of not less than $10,000.

Art. 5027 provides for service of process; Art. 5028 for a statement of the security behind the indemnity exchanged; Art. 5029, for the maintenance of a reserve; Art. 5030 for an annual report by the insurance company to the Commissioner and concludes, "The business affairs and assets of said reciprocal or inter-insurance exchanges, as shown at the office of the attorney thereof, shall be subject to examination by such Commissioner." Art. 5031 authorizes corporations to exchange indemnities; Art. 5032 requires the attorney for the exchange to procure annually from the Commissioner a certificate showing compliance with all the requirements of law, and provides that such certificate may be revoked or suspended; Art. 5033 provides: "except as herein provided, no insurance law of this State shall apply to the exchange of such indemnity contracts unless they are specifically mentioned."

[2] Par. 8 of the Stipulation.

[3] "He shall also have power to institute suits and prosecutions, either by the Attorney General or such other attorneys as the Attorney General may designate, for any violation of the law of this State relating to insurance. No action shall be brought or maintained by any person other than the Commissioner for closing up the affairs or to enjoin, restrain or interfere with the prosecution of the business of any such insurance company organized under the laws of this State."

[4] This Article authorizes the Commissioner to require free access to all books and papers within this State, of any insurance companies or their agencies doing business therein; to examine any person relative to the affairs and condition of any insurance company; to visit the principal office of any insurance company doing busiess in the State, and to revoke or modify any certificate of authority.

[5] "Any unincorporated company, and any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation * * * may be adjudged an involuntary bankrupt."

pany, and to urge that the bankruptcy court neither could, nor should, adjudicate it an involuntary bankrupt.

The issue of jurisdiction thus raised was submitted on a stipulation showing the facts set out above. Upon these facts the District Judge concluded that appellant did no insurance business; that, an unincorporated company having no charter or capital stock, it was merely an association of its members for the interchange of business between them, and for their mutual help and assistance; that it was therefore not an insurance corporation, but merely an unincorporated company and subject to be adjudicated an involuntary bankrupt under Sec. 22(b) Title 11 U.S.C.A. He overruled appellant's contention that though an unincorporated company, it was a corporation under Sec. 1(6) Title 11 U.S.C.A., as amended May 27, 1926, § 1, 44 Stat. 662, by adding "joint stock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees, wherein beneficial interest or ownership is evidenced by certificate or other written instrument." He thought that the definition was, within the general saving clause of Sec. 1, "inconsistent with the context" of Sec. 22(b) authorizing "any unincorporated company" to be adjudicated an involuntary bankrupt, and must therefore be held inapplicable to that section.

Having thus found that appellant was not an insurance corporation, he ordered appellant adjudged a bankrupt. Appellant brings these conclusions and the order into question here, asserting that they are wrongly based, because (a) under the stipulated facts, and under the statutes and decisions of Texas, appellant is an unincorporated company or association, "having powers and privileges of private corporations, not possessed by individuals or partnerships," doing an insurance business, and (b) it is therefore, by Sec. 1(6) as amended, an insurance corporation under Sec. 22 (b) Title 11 U.S.C.A. both as it existed before, and as it stands now under the Chandler Act,[6] by the deletion from it of the words "any unincorporated company."

■ We think it may not be doubted that the order must be reversed, and the proceedings dismissed for want of jurisdiction. That appellant was an insurance association, and was doing business as such, the stipulation, the insurance statutes of

Texas, and the decisions construing them, leave in no doubt.

Title 78, Revised Statutes of Texas, Vernon's Ann.Civ.St., dealing with insurance, contains 21 chapters; some of these are general, like Chapter 1, providing for a Commissioner of Insurance, and giving him general supervision over persons, companies, and associations doing an insurance business. Other chapters deal each with a particular kind of insurance. Of these Chapter 19, dealing with Lloyds Plan, and Chapter 20, with indemnity contracts, have to do with forms of insurance, which though not identical, are quite similar in form, nature and plan. It was under Chapter 20 that appellant was organized and as stipulated, "continued to transact an insurance business, consisting of Workmen's Compensation, public liability, explosion, fire, property damage, surety bond and automobile insurance under authority of the Department of Insurance."

■ It is settled law in Texas, as to both of these plans, that business done under them is insurance, and that the business conducted under these plans, and the organizations which conduct it, are subject to the applicable provisions of the Texas Insurance laws, including the one for their liquidation, exclusively at the suit of the Commissioner. Farmers' Gin Co. v. Armstrong, Tex.Civ.App., 80 S.W.2d 448, 449, dealt with an indemnity association like the one at bar, State of Texas v. Robinson, Tex.Civ.App., 42 S.W.2d 457 with a Lloyd's Plan association.

In the first case cited, the court, rejecting the contention that the winding up statutes of Texas are inapplicable to associations organized under the reciprocal, or inter-insurance plan, said [page 450]: "The business of insurance is quasi public in its nature, and subject to regulation and control by the state. The policy of this state with reference to the dissolution and winding up of the affairs of its legal entities is that the right to bring about such results belongs exclusively to it, and that individuals, unless authorized by statute, cannot invoke the aid of the courts to effect such purpose."

While, in State of Texas v. Robinson, dealing with a Lloyd's Plan association, the court said [page 458]: "We believe [it may] be correctly said that the business of insurance, however conducted, is quasi pub-

---

[6] Act of June 22, 1938, Ch. 575, 52 Stats. 840, 11 U.S.C.A. § 22(b).

lic in nature, and subject to regulation and control by the state, * * * and this doctrine is equally applicable to insurance conducted under the Lloyds plan."

Our cases, Grand Lodge K. of P. of La. v. McKee, 5 Cir., 95 F.2d 474, and Grand Lodge K. of P. v. O'Conner, 5 Cir., 95 F. 2d 477, on which appellees rely, do not sustain, they make against appellees' contention that appellant is not an insurance corporation.

In those cases we pointed out that the state courts of Florida and Louisiana respectively had held, as to the Grand Lodge of that State, that it was not, under the State statutes, an insurance company, but a mere fraternal benefit society, and so pointing out, we held of course that neither of them was an insurance corporation excepted by Sec. 22(b) from the jurisdiction of the bankruptcy court. Here the converse is true; the State courts of Texas hold associations like appellant to be insurance companies in Texas, and subject to its applicable insurance laws. We therefore hold them to be insurance corporations under the bankruptcy law.

The point on which the District Judge turned his decision, and of which appellees make so much, that the definition of "corporation" in Sec. 1(6) supra is inconsistent with Sec. 22(b), is, we think, without substantial merit.

We think it quite plain that Congress, in amending the definition of corporation in 1926, and using in the amendment the broad and descriptive language contained there, intended to meet and do away with the existing anomaly. This anomaly consisted in subjecting to bankruptcy, insurance associations with corporate attributes and powers, but without corporate form, while exempting from it such associations having corporate form, though, under the laws of the State, each was under substantially the same control, each subject to substantially the same statutory liquidation.

In Re Lloyds, of Texas, D.C., 43 F. 2d 383, Judge Atwell, in a careful and well considered opinion, held a Lloyds association to be an insurance corporation and exempt from adjudication. We agree with both the conclusion and the reasoning of that opinion.

If, however, we should be mistaken, and the District Judge was right in the view he took, that Sec. 22(b), because it read, "any unincorporated company", was inconsistent with the definition of "corporation" contained in Sec. 1(6), that inconsistency has been completely removed by the Chandler Amendment, which elides the words "unincorporated company" and leaves Sec. 22(b) reading, "Any moneyed, business, or commercial corporation, except a building and loan association, a municipal, railroad, insurance or banking corporation * * * may be adjudged an involuntary bankrupt." Home Savings & Loan Ass'n v. Plass, 9 Cir., 57 F.2d 117; Grzenia v. Lucius, 7 Cir., 66 F.2d 349; Lewis' Sutherland Statutory Construction, 2nd Ed. Sec. 285 pp. 550–554; United States v. Kelly, 9 Cir., 97 F. 460; Fairchild v. United States, C. C., 91 F. 297; In re Hall, 167 U.S. 38, 17 S.Ct. 723, 42 L.Ed. 69. Cf. Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L. Ed. 152.

■ In so concluding, we have considered, only to reject, appellees' contention that Sec. 6(b) of the Chandler Act, 11 U.S.C. A. § 1 note, providing that except as otherwise provided in it, the amendatory act "shall govern proceedings, so far as practicable in cases pending when it takes effect", is prevented from applying to this case by the provision in Subd. (a) of the Section, that "Nothing herein contained shall have the effect to release or extinguish any penalty, forfeiture, or liability incurred under any Act or Acts of which this Act is amendatory."

■ We think it self-evident that that provision has, and can have, no such meaning or application as appellees, by their contention, would give it. The "penalty, forfeiture, or liability incurred" of which the Section speaks, is something to which the bankrupt, or persons dealing with him, had become subject by reason of failure to comply with, or breach of, the existing bankruptcy law. It does not purport to, it does not deal with, questions like this, of jurisdiction.

Complete, comprehensive, all-embracing, and clarifying and remedial in scope and purpose, the Act was intended to have, and in terms was given, application to all pending proceedings, "except where otherwise specifically provided." The Subdivision of the Section appellees invoke in no manner limits its jurisdictional application. It merely provides against releasing "any penalty, forfeiture or liability" which was existing at the time of the Amendment. Appellants' status as subject to or exempted from bankruptcy under the former Act was a matter of jurisdiction, and not of

penalty, forfeiture, or liability. Richmond Standard Steel Spike & Iron Co. v. Allen, 4 Cir., 148 F. 657; Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409.

The order of adjudication is reversed, and the proceeding is dismissed.